Compilers

# IN THE SUPERIOR COURT OF GUAM

SARAH ALEJANDRO QUITO,      )      DOMESTIC CASE NO. **DM0263-11**
                       Plaintiff,      )
                                        )      **FINDINGS OF FACT and**
        vs.                             )      **CONCLUSIONS OF LAW;**
                                        )      **INTERLOCUTORY DECREE OF**
MACARIO P. QUITO,                       )      **DIVORCE**
                       Defendant.      )
_____ )

## INTRODUCTION

The above-captioned matter came on for Bench Trial before the Honorable Arthur R. Barcinas on September 12, 17, and 24, 2012; October 29, 2012; and January 11, 2013, on the Complaint for Divorce of Plaintiff SARAH ALEJANDRO QUITO and Counterclaim for Divorce of Defendant MACARIO P. QUITO. Plaintiff SARAH ALEJANDRO QUITO was present with counsel, Joaquin C. Arriola, Jr., Esq. Defendant MACARIO P. QUITO was present with counsel, Daniel E. Somerfleck, Esq. Having heard the testimony of the Parties and reviewed the Exhibits introduced at trial, the Court now issues the following Findings of Fact and Conclusions of Law on the matter presented.

## I.

## FINDINGS OF FACT

In a bench trial, the Court is the trier of fact and is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. United States v. Bale, 813 F .2d 1289, 1293 (4th Cir. 1987). The Court has both the right and duty to weight the evidence and to draw reasonable and rational inferences from the facts in evidence, including circumstantial evidence. State v. Halmos, 755 P.2d 1226, 1227 (Haw. 1988). The trial court is afforded deference and

due regard in determining the credibility of witnesses. Jenkins v. Montallana, 2007 Guam 12, ¶9;Town House Dep't Stores, Inc. v. Hi Sup Ahn, et al, 2000 Guam 32, ¶13.

At the onset of Trial, this Court expressed concern about this Court's jurisdiction over the property located in the Philippines. By agreement of the both parties, the Court agreed to divide not only the property located in Guam but also that located in the Philippines.

In this matter both parties in their Complaint and Counterclaim pleadings set forth the date of marriage as May 24, 1982; however, during testimony both parties testified to a marriage that occurred on October 25, 1980 which was a civil marriage, but not recorded. As both parties had asserted that the first service occurring on October 25, 1980 was not registered, this Court finds that based upon the parties pleadings and the testimony, the date of marriage to be May 24, 1982.

The parties began their relationship while they were still in high school. Defendant left for Guam in 1980 and after the May 24, 1982 marriage, in June of 1983 the Plaintiff and Defendant moved to Guam. The Defendant became a U.S. citizen in 1983 and petitioned Plaintiff to become a U.S. citizen which occurred in 1985. In October 1983, the Plaintiff returned to the Philippines to deliver the parties first child. After remaining in the Philippines for 6 ~ 8 months, Plaintiff returned to Guam. The parties then moved to Los Angeles, California in 1985. From 1983 until 1985, the Defendant had worked at a relative's grocery business where he continued to work until the parties' relocation to Los Angeles, California in 1985. Upon relocation to Los Angeles, the Plaintiff became employed as an X-Ray Technician and Defendant continued to work in the grocery industry.

The parties purchased while residing in California a house in Oxford, California which they kept until 2005. At the time of sale the house sold for $300,000.00 and had $144,000.00 in

debt realizing for the parties a $156,000.00 profit for that home. In 1988, the Defendant returned to Guam and began an import business with the assistance of his brother and a close friend. In 1990, Plaintiff and the parties' minor children relocated to the Philippines. Although Plaintiff alleges in her Complaint that she was forced to go to the Philippines, testimony of the circumstances of the Plaintiff's residence in the Philippines does not suggest that the Plaintiff was forced to go to the Philippines nor that her lifestyle in the Philippines was anything but affluent with a household staff consisting of a chauffeur and at least 2 if not more housekeepers. Additionally, Plaintiff testified to numerous trips she had taken to Guam and the Defendant had made to the Philippines. The parties acquired the house in Latte Heights in 1992 for $133,000.00. At the time of acquiring the house, the parties took out a mortgage at Bank of Guam and at the time of separation had been paid off. In December 1992, the parties had their third child during the time the Plaintiff resided in the Philippines.

In 2005, the parties' marriage began having difficulties as Defendant began expressing concerns regarding the Plaintiff's fidelity. Prior to Christmas in 2005, an incident occurred when the Defendant became aware of emails and telephonic communication between the Plaintiff and other males in which the Plaintiff is conducting relationships to the point of having multiple phones in which to communicate with different individuals. At the Christmas event, Plaintiff describes having bruises on her legs and the eldest son intervening between the parties. Defendant asserts that at the event, Plaintiff was attempting to harm him by kicking him in various areas of his body including his groin area. As a result of that incident, Plaintiff returned to Guam and made a report on Guam regarding an incident that occurred in the Philippines.

Defendant testified that it was at this time also that the family import and retail business, L.A. Pacific, was experiencing financial downturns as a result of the increased value of the peso

to U.S. dollar, additional cost of shipping and increase in competitiveness in Guam market. By 2007, the parties business L.A. Pacific was experiencing great financial difficulties which further put strain on the parties' relationship and was closed in 2010. Also in 2010, the Plaintiff returned to Guam. Although not employed except in the family business, Plaintiff had control of the family savings and by August 2010, would not allow the Defendant access to such funds without the execution of promissory notes. In April of 2011, Plaintiff returned to full time employment at Guam Radiology as a Monographer.

During the course of the marriage the parties acquired extensive community and separate property and debts: The Court finds the following:

A. Lot No. 25-R1, Tract 320, Municipality of Barrigada, Guam; Sarah Quito Macario P. Quito.
Plaintiff's Value: $170,000
Defendant's Value: None Testified to.
Tax Assessed Value: $156,000
Mortgage Balance/SBA: $48,812.41; as of January 2009.

D. Real Property Philippines Listing:

D1. Title Documents: "Pampanga Vacant Lot" - Beverly Place Contract No. 2786. Lot No. 33, Block No. 19 located in Mexico Pampanga, Philippines.
Purchase Value: P513,000 = $12,214.28.
Plaintiff's Value: $16,666.66.
Defendant's Value: $18,000.00.

D2. Title Documents: "Quezon City Residence" - Lot No. T224537 located in Quezon City. Philippines.
Philippines Tax Value: $44,444.44.
Plaintiff's Value: $244,000.00.
Defendant's Value: $320,000.00.

D3. Title Documents: "Pillilia Vacant Lot" - Cadastral Lot 3484 located in National Road consisting of approximately 1906 sq. meters in Pillilia, Rizal, Philippines.
Philippines Tax Value: $400.00.

Plaintiff's Value: $1,000.00.
Defendant's Value: $15,000.00.

D4.  Title Documents: "Pillilia in front of Farm" - M-125642, Pillilia Rizal, Philippines.
Philippines Tax Value: None submitted
Plaintiff's Value: $25,000.00 - $30,000.00
Defendant's Value: $32,000.00.

D5.  Title Documents: "Gas Station & Commercial Building" - Lot No. M-138773. Pillilia, Rizal, Philippines.
Philippines Tax Value: $14,977.11
Plaintiff's Value: $83,333.33.
Defendant's Value: $83,300.00

D6.  Title Documents: "Pampanga Vacant Lot" - Beverly Place Contract No. 2794. Lot No. 36, Block No. 19 located in Mexico Pampanga, Philippines.
Purchase Value: P513,000 = $16,666
Plaintiff's Value: $24,000.00;
Defendant's Value: $20,000.00.

D7.  Title Documents: "Pilllilia FARM & PIGGERY" - Lot No. 105494 located in Palilla, Province of Rizal, Philippines (in trust for Son).
Philippines Tax Value: $109,141.55
Plaintiff's Value: $714,000.00
Defendant's Value: $130,000.00

D8.  Title Documents: "Meycuaan Commercial/Residential Building" - Lot 3573-B-1 Title No. T-261277 located in Mecauayan, Bulacan, Philippines.
Philippines Tax Value: $51,723.46
Plaintiff's Value: $285,000.00
Defendant's Value: $100,000 - $120,000.00

E.  Automobiles:

2003 Toyota Hilux (Son) in Philippines

2002 Ford Expedition without chattel mortgage in Philippines (Defendant in possession)

1997 Isuzu Wing Van (ten-wheeler) without chattel mortgage in Philippines (Defendant in possession).

1997 Toyota Land Cruiser (Defendant in possession)

2005 Ford Ranger (Defendant in possession)

2004 Toyota Tacoma (Defendant in possession)

2009 Honda CRV with chattel mortgage in the approximate amount of $9,000 in California - (Plaintiff/Son in possession)

1995 Isuzu Elf in Philippines (Plaintiff in possession).

Plaintiff further testified and presented evidence of the following loans or debts owed to her by Defendant:

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| G. | Promissory Note for 196,690.59 pesos (USD $8.962.35). |
| H. | Promissory Note for $50,000.00. |
| I. | Acknowledgment of Receipt of $12,000.00 from Savings Account. |
| Q. | Loan Spreadsheet total of $120,128.47 Defendant owes to Plaintiff. |

Plaintiff and Defendant further testified and presented evidence of the following debts:

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| C. | Mortgage Documents: Small Business Administration; Macario Quito; Balance - $48,812.41; as of January 2009 - The Court find that this is a community debt of the Parties. |
| L. | BPI Express Credit Card Statement of Account with an approximate balance of Philippine Peso 446,812.87 (US $9,929.17) - The Court finds that this is a community debt of the Parties; |
| M. | Meralco Demand Letter in the approximate amount of Philippine Peso 80,000 (US $1,747.77). - The Court finds that this is a community debt of the Parties; |
| N. | Internal Revenue Service Notice of Levy for $160,148.13, LA Pacific International Trading - The Court finds that this is the separate debt of Defendant. |

1.   Bank of Hawaii v. Macario Quito dba LA Pacific International Trading; CV16981-10; Default Judgment $75,434.34, May , 2012 - The Court finds that this is the separate debt of Defendant.

## CONCLUSIONS OF LAW

This Court has jurisdiction pursuant to Title 7 Guam Code Annotated, Section 3105 and Title 19 Guam Code Annotated, Section 8201 et seq. The court may grant a divorce for cause on any of the following grounds: "(a) Adultery; (b) Extreme cruelty; (c) Willful desertion; (d) Willful neglect; (e) Habitual intemperance; (f) Conviction of Felony; (g) Irreconcilable differences." 19 G.C.A. §8203. "Extreme cruelty" is defined as "the wrongful infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage." 19 GCA §8205. In accordance with 19 GCA §8411(a) if the court renders a decree on the ground of extreme cruelty the community property shall be assigned in such proportions as the court deems just.

The Court received evidence of certain promissory notes executed by Defendant in favor of Plaintiff. Guam law provides "A husband and wife 'may enter into any engagement or transaction with the other' respecting property, subject 'to the general rules which control the actions of persons occupying confidential relations with each other'." Blas v. Cruz, 2009 Guam 12 ¶ 21 (quoting 19 GCA § 6111(a) (2005)). "Although a husband and wife generally cannot contract to 'alter their legal relations,'" they may consensually alter their relations with respect to property by contract. Id. (quoting19 GCA § 6111(b)).

"A contract is an agreement to do or not to do a certain thing." 18 GCA § 85101 (2012). The elements of a contract on Guam are: 1) parties capable of contracting; 2) consent of the parties; 3) a lawful object; and 4) sufficient consideration. 18 GCA § 85102 (2012); see also

Blas v. Cruz, 2009 Guam 12 ¶18. In order to form a valid contract, it is also essential that the parties be identifiable. 18 GCA § 85203 (2012). Additionally, all contracts between husband and wife of which the subject matter is their separate or community property must be in writing and executed and acknowledged or approved in like manner as a grant of land is required to be executed and acknowledged or approved. 19 GCA § 6112 (a).

The Court concludes that the Promissory notes and other transactions between the parties are binding upon the parties.

Both parties sue for extreme cruelty. Based on all of the testimony and evidence received, THE COURT FINDS that the Plaintiff has proven by a preponderance of the evidence that there are substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved. Plaintiff has also proven by a preponderance of the evidence that Defendant has inflicted extreme physical and mental cruelty on Plaintiff. As such the court grants the Plaintiff a divorce based upon the grounds of extreme cruelty.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED as follows:

1.      Plaintiff shall have and be entitled to a divorce from Defendant on the grounds of extreme cruelty, and this INTERLOCUTORY DECREE OF DIVORCE is hereby entered.

2.      Plaintiff shall have and receive, as her sole and separate property, all personal jewelry, clothing and effects in Plaintiff's possession and all accounts in Plaintiff's name alone.

3.      Defendant shall have and receive, as his sole and separate property, all personal jewelry, clothing and effects in Defendant's possession and all accounts in Defendant's name alone.

4.      Based on the Court's finding of extreme cruelty against Defendant, Plaintiff shall have and receive:

Quezon City Residence - Lot No. T224537 located in Quezon City;

Pillilia in front of Farm - M-125642, Pillilia Rizal, Philippines, Philippines;

Gas Station & Commercial Building - Lot No. M-138773. Pillilia, Rizal, Philippines;

Pillilia FARM & PIGGERY - Lot No. 105494 located in Palilla, Province of Rizal, Philippines (in trust for Son);

Meycuaan Commercial/Residential Building - Lot 3573-B-1 Title No. T-261277 located in Mecauayan, Bulacan, Philippines;

2009 Honda CRV with chattel mortgage in the approximate amount of $9,000 in California; and

1995 Isuzu Elf in Philippines.

5. The Court awards the following to the Defendant, to wit:

Lot No. 25-R1, Tract 320, Municipality of Barrigada, Guam;

Pampanga Vacant Lot - Beverly Place Contract No. 2786. Lot No. 33, Block No. 19 located in Mexico Pampanga, Philippines;

Pillilia Vacant Lot - Cadastral Lot 3484 located in National Road consisting of approximately 1906 sq. meters in Pillilia, Rizal, Philippines;

Pampanga Vacant Lot - Beverly Place Contract No. 2794. Lot No. 36, Block No. 19 located in Mexico Pampanga, Philippines;

2003 Toyota Hilux (Son) in Philippines;

2002 Ford Expedition without chattel mortgage in Philippines;

1997 Isuzu Wing Van (ten-wheeler) without chattel mortgage in Philippines;

1997 Toyota Land Cruiser;

2005 Ford Ranger; and

2004 Toyota Tacoma.

6. Based on the Court's findings of extreme cruelty, the debts shall be paid as follows:

Plaintiff:

BPI Express Credit Card Statement of Account with an approximate balance of Philippine Peso 446,812.87 (US $9,929.17); and

Meralco Demand Letter in the approximate amount of Philippine Peso 80,000 (US $1,747.77).

Defendant:

Small Business Administration; Macario Quito; Balance $48,812.41, as of January 2009;

Internal Revenue Service Notice of Levy for $160,148.13, LA Pacific International Trading; and

Bank of Hawaii v. Macario Quito dba LA Pacific International Trading; CV1691-10; Default Judgment $75,434.34.

Based upon the distribution of the Court as set forth above, the court finds that no spousal support or alimony will be required.

That Good Cause exists for the waiver of the (6) month interlocutory period and therefore, a Final Decree of divorce shall be entered granting the Parties a Divorce herein without the six (6) months interlocutory period.

**IT IS SO ORDERED:** ___SEP 0 6 2013___.

_____
**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**


I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam, Dated at Hagatna, Guam

SEP 0 6 2013

Scott E. Hermosilla
Deputy Clerk
Superior Court of Guam